Next case for argument is 17-1250, OpenTV v. Matal. This case is 17-1250, OpenTV v. Matal. I reserve three minutes for my rebuttal, please. Good morning, and may it please the Court. This appeal is an example of the worst-case scenario for a patent owner in an IPR. Not only have the claims been canceled as being anticipated by a reference that lacks the fundamental teaching of the claims, but at every stage of the IPR, the patent owner was not afforded the protections of the IPR statute and of the APA. The most egregious example of those violations is the violation of Section 312 of the AIA, which requires the petition to set forth the grounds with particularity, so that the patent owner knows what the grounds for unpatentability are proposed in the petition. We can't review that particular issue, correct? You cannot review the institution decision. But the failure of the mapping in the petition violated 312 and also the APA. The fact that the petition was such a mess here that the patent owner never understood the mappings of the reference to the claim elements. If I could turn you to the petition, I'd just like to explain, because this petition is really extraordinarily difficult and unintelligible. I'd like to turn you, if I may, to the blue brief, pages 29 to 33. It was difficult for us to explain, given the complexity of the petition and the massive amounts of citations with little to no explanation. It was difficult to explain how that failed 312. This is our attempt to do so. I just want to make sure that you understand what we're showing here. The claims include a system configuration that has multiple elements. We cannot review 312 issues. That's right, but this is an APA issue as well. There were also 316 issues, and I can talk about that, where the board came in. I guess the reason I'm focusing so much on the petition is not so much that I'm asking you to uninstitute the case or review the board's institution decision. What I want to make sure you guys understand is that the petition was such a mess. They threw everything at the wall to see what would stick, but it gave rise to these other errors. We've got less than 15 minutes here, so it would be helpful rather than we've seen your brief, we've tried to understand your brief. Could you just talk to us in English? Sure. Tell us, you've got several arguments here on APA violations. Can you just either take one of them or all of them, but tell us what limitation you say is problematic or not met, and how the board did the wrong thing by saying it was met. Okay. Yes. I'll focus you. The primary challenge that I think I'd like to focus you on is the violation of the APA section 316, which is the problem where the board adopts a position, a theory, in the final written decision. It's the inherency theory, yes. Paragraph 72 of the expert declaration. At the final written decision, it's in 17. Where is it in the written decision? I'll take you to Appendix 17. In the middle of that page, there is the sentence that begins with thus. We're discussing the access element, which is part of the claim configuration, and the access element is found to be present in Tomioka, and the board introduces that sentence thus. A person of ordinary skill would understand that listening, viewing, and browsing preferences disclose activities on different devices, and consequently accessing those preferences on different devices. The only argument with regard to what you call this new argument about inherency involves paragraph 72 on the C-site. That's right. Paragraph 72. The other documents cited, the four pages from the petitioner's brief and the other exhibits and the other paragraphs, 70 and 71, those don't encompass the inherency. Well, 72 is where the inherency argument comes from. I will note, though, that 70 and 71 were newly cited for this claim element here. They were not in the petitioner's original mapping. But I thought you were talking about inherency. Paragraph 72, yes, and I think it's important. I'm having to just, if we're reading everything the board said, we're talking about the access element, right? So they've got a couple pages on the access element, numerous citations to the exhibits and the petitioner's brief. They never even mention the argument, the words, inherency. They're talking about this claim limitation and citing to evidence that was presented that this claim limitation actually existed in Tomica. I say Tomioka. Tomioka. So I think, why am I not correct that it's kind of a stretch to rely not on any words the board even used, but on one paragraph out of numerous citations, which arguably refer to inherency, and to then say, whoops, we've got an APA violation because the board relied on inherency and that wasn't otherwise presented. So the reason that we call out 72 as an example, I guess I can talk about paragraph 72 itself, but also it is one of many examples, which is why I started with the petition, because the petition was such a mess that there ended up being multiple. And you've seen in our brief, there are multiple different new citations and mappings throughout the proceeding. Yeah, but we're talking about the board's opinion. So let's look at, and we're talking about the issue of whether or not they appropriately concluded that the access element was present in the prior art. So what is it about the board's discussion of that, which consists of three paragraphs, that your argument here is they relied on a new argument, which was something to do with inherency. Where do we find that reliance other than paragraph 72? So if you look at what paragraph 72 actually says, so 72 was not advanced by the petitioner, not in the petition. You're misunderstanding the point. So even if I were to agree with you that paragraph 72 speaks of inherency, even if I were to completely agree with you on that, the board has articulated in three paragraphs its reasoning and the requirements of the access element. It has cited multiple other references to support its conclusion that Tomioka discloses this access element. It doesn't say the word inherency anywhere in it. It doesn't even use the words necessitate or anything. So even if paragraph 72 does, it's a C site, there's other stuff cited. I'm looking at all the other stuff cited, and all that other stuff cited says it's expressly in Tomioka. None of it can even arguably be alleged to be arguing inherency. The petition doesn't argue inherency. You win on that point. It doesn't. But that's what the board cited. The petition does say Tomioka expressly discloses this. The board cites it and then says, for the reasons explained by the petitioner, we agree. It does disclose it. So who gives a rat's patootie about paragraph 72 when the board articulated 15 other reasons why this element was satisfied? Well, I think the patent owner gives a rat's patootie, and the reason is because this is simply one example. And at the bottom of it, on the substantive issue, Tomioka doesn't have the key claim element of which access is a part. The key claim element, and we have that color-coded claim in our brief to show you that the key in these claims is that an activity on a first device affects content sent to a user during an activity on a second different device. That's what's missing. And it is most clear in the transmit element, but it appears here in the access element, the relationship between those two devices and the activities on different devices. But this is a merits argument. And if you want to go there and abandon this APA argument, which is not a merits argument. The APA argument is a procedural argument about not having fair due process. And you've answered my due process question with turning to the merits, which is fine if you want to turn to the merits and give up on the process argument, but that's what your answer has done. It's given up on the process argument, because my statement to you had nothing to do with the merits. It had to do with the patent office has done its job. It articulated all the reasons why Tomioka, now you may be telling me those reasons aren't correct, but that's a merits argument. It has nothing to do with your APA. But it articulated reasons, none of which are inherency, none of which use the magic words of inherency, and it has lots of sites. And when you look at all the pages at sites, none of them use inherency. They all say it's expressly present. So I'm focusing not on the merits. If you want to go there, we can. I'm focusing on the APA issue. You said this is the single clearest example, and I don't see anything. Well, that's my problem. And I'm not walking away from the procedural issue. And I would say that it's more than an APA issue. This new theory, and I believe you understand that the inherency argument is coming from the expert who said something was necessarily present, which is an inherency argument, which was not made. And they're doing it, combine that with they're doing it based on a paragraph that was never cited by. That paragraph says something different than all the other paragraphs. And it was never cited by the petitioner in the petition or the reply. And so it's the coupling of those two things that makes that what we hope is a clear example of a problem under 316, like Magnum Oil, where the board is not requiring the petitioner to make its full case, but it's relying on its own theory and its own evidence. But in addition to that 316 problem, I do believe that it is an APA problem, similar to SAS or Americhem, where the board introduces a new theory at the final written decision. But even on top of those, we do have a violation of 312. And I don't believe you're not allowed to review at all whether the board enforced 312. That's part of the statute. And the requirement for the petition to be particular under 312 is talked about in the Illumina case as being particularly important, because if the patent owner cannot tell from the petition what the grounds are, and here it was a huge amount of things, and the theories were shifted by both the board and the petitioner throughout the trial. And the problem is that these are expedited proceedings. As soon as a petition is served on you, the patent owner has to make a number of decisions, whether or not to try to amend their claims, what evidence to put in. That has to be done in the beginning. And that's why it's important that the board enforce 312, beyond the decision to institute. But there are other APA violations as well, which are spelled out in our brief. And so I don't by any means mean to walk away from those issues, because this case is an egregious example of not just one, but multiple problems that all stemmed from a petition that had literally thousands of different possible mappings through the configuration in these claims, which runs throughout the elements of the claims. And we've given you an example in our brief of how little there was in the petition, which spawned all of these other problems. But I would say that both 312 and 316 are violated here, in addition to the APA. You probably do as many, if not more, of these IPRs than I seem to do these days. But this is a one-reference IPR, and I counted those pages. It's less than 80 pages, that reference, most of which looks to be code that isn't actually cited. The cited pages seem to be narrowly limited to the first 120 paragraphs of that reference, which is really about 22 pages. How convoluted can a petition really be when it's based on anticipation of one reference and cites only 22 pages of that reference? Really? I mean, you think that makes life so unfair for the patent owner that it has to combat the citation of multiple paragraphs in one effectively 22-page document? I don't understand. I was surprised by that as well here. That's the due process violation? That's what you think we should tell the Supreme Court? It is a due process violation when multiple particular paragraphs of a 22-page document are cited, and we have to respond to them. But the standard is not whether there is a lot of evidence of certain elements. It is whether the elements are shown in the arrangement and the claims. And here, where we have claims that have a link that carries throughout all of the claims, what was missing in that petition, I'm not concerned about the size of the reference. We've had whole books cited against us. Although I will tell you, I have handled a lot of these IPRs, and this is the worst petition I have ever seen. And I say that with my experience and my having sat down, and others on our team will tell you, when you sit down and actually, without the benefit of the hindsight of where they went later, go back to that petition and try to understand what they were mapping to the first activity and the first device that then later has to be the second activity and the second device, and how they have to be related. And most importantly, the final element, the final connection, which is activity on a second device affecting content. Not just that there are two devices, not just that there can be content from the web or content from TV, but that there actually has to be an express recitation of activity on the first device affecting the content that is sent. The example in the spec is something you do on your phone causes an ad to show up on your TV later. That is not what Tomioka is about. I'm into my rebuttal time. We'll hear from the government. We'll restore two minutes. Thank you. May it please the Court, Your Honor. I guess our main response is, number one... Just out of curiosity, you see a lot of these IPRs. Is this the worst petition you've ever seen, too? No, Your Honor. I don't think it's that bad. In fact, I think it's quite clear. If you turn to pages A2023 to appendix 2033, that's a 10-page range. And you say not that bad. Let's just look at the appendix that was provided, the claim chart that was provided with the petition. It starts at appendix 2023. That's the very first page of the claim chart. What the petitioner did, which is quite common for a lot of these petitions, they come in with some prose, explanation of where the elements are in a particular prior reference, and then they provide a claim chart summarizing it. If you see starting on page appendix 2023, going up to pages 2033, that is a range of 10 pages. But that is a claim chart that lays out each element of claim 14 and where those elements are found in the reference. In the chart, you'll see the element on the left, and you'll see the citation to the references, the paragraphs in the reference on the right. And if you go through all those citations, what you'll find is, if you go back to the board decision, the board decision sites come from this claim chart. This is where they come from. So we don't think it's that confusing or that difficult to understand. In fact, we think it provided a pretty clear road map of where the prior art provided the features in the claim. Now, just to talk about the prior art in simple English, let's not get too bogged down in terminology, but essentially what the claim requires is that a user profile be developed by your usage of a device. Let's say, for example, a TV or a radio. You use the TV, you watch certain programs. The programs that you watch, data is collected, and it determines that you like a particular type of programming. For example, I might like to watch football, and it develops a profile for me that I'm a football watcher. So it knows now, this data says, Bill likes football, he likes to see that. The profile is developed. In the claim, they call that a user profile. In the prior art, they call that a user description scheme. They're effectively the same thing. They use different words to describe the same type of feature. I now take my profile. The prior art says the profile is mobile or portable. I can take that profile to another device. I can plug it into another device physically, or I can transmit it to the other device electronically. Either way, the prior art says, can be done. Now that new device has been personalized for my use. So now I can turn on a radio in my car. I can turn on a TV in a hotel room. I can go browse the internet. Whatever it is, the new device that I've uploaded my profile to will now provide me with customized programming. That's effectively what the claimed invention is, and that's exactly what the prior art talks about. Now, it's true, just like open TV space. I have four kids. So does that mean when I go places, the crap that's going to pop up is all the stuff my kids watch all the time? Well, open TV provides the option for you to control the user profile, and you can turn it off if you choose to. That's what's in the disclosure of the prior art device. But the point we're trying to make is the claimed chart is pretty clear. It's true that within the prior art reference, there are many, many paragraphs that cite these features. It's interesting because the board's decision, though, doesn't cite these pages of the claimed chart relating to access, which appear on, I think, JA2031 with the access limitation. Instead, what the board cites for the petition is pages 15 to 17. The board doesn't cite the claimed chart and draw me to that. I agree it's in the petition. Just keep in mind, Your Honor, pages 15 to 17 are the paragraph prose where they describe the reference, and then the claimed chart is a summary of what they have in that prose. So what's on 15 to 17 also appears in parallel on the claimed chart. Now, the claimed chart indeed has probably extra cites beyond what's in the prose in pages 15 to 17. To be clear, it looks like the claimed chart has only the citations to the reference itself and none of the citations, for example, to the expert report, which are contained in the prose. Is that right? It's true. The expert report would be cited up front in the prose where it exists. It also shows up in their reply as well when they respond to arguments made by Open TV. Her strongest argument that she made, certainly it's what she led with, and she believes it's her strongest argument, is the paragraph 72 reference in the board's opinion. Now, forget about whether or not paragraph 72 actually triggers the expert analyzing this under an inherency standard. Don't try to argue that. I don't want to have that argument. Let's assume it does, you and I. We're just assuming for purposes of these questions that in paragraph 72, the expert said it's inherently present. Okay? Give them that for now. Right. Well, it's assuming... The petition never cites paragraph 72. That's true. The petition, however, had attached to it the expert declaration when it came in, so the expert declaration was provided along with the petition. See, that would make my head explode. Petitions can attach a lot of stuff to them sometimes. This one, it's just one reference and one expert declaration. I didn't actually think this petition was particularly onerous, because it's only one document. This isn't even an obviousness case. This is just anticipation. But in general, you can't suggest to me that a patentee ought to anticipate for each separate element in the claim, everything attached to that petition, even not triggered to that claim or that element, is fair game. Can you? And we don't disagree with you, Your Honor.  And I'm agreeing with you. Paragraph 72 from the expert declaration was not cited in the petition. All I'm pointing out is the declaration didn't just come from nowhere. It was attached with the petition. And, by the way, the petition actually did cite a lot of the surrounding paragraphs. 70 and 71 are cited. I think paragraphs 74 to 76 were also cited. So numerous paragraphs from the expert declaration were cited. But you're correct, and Open TV is correct, that paragraph 72 was not cited. But as you pointed out earlier, I think when you were questioning Open TV's counsel, when you read the board decision, the board does cite to many other citations in the prior reference which are cited in the petition, which are in the claim chart, and their analysis really is based on a lot of those citations. Suppose that 72 were the only cited. Suppose that the only thing, these are hypotheticals. I know it's not this case. Right. But suppose that the only thing the board cited was paragraph 72. Would we have a problem here? I think it would be closer to being more of a problem, because if that's all the board relied on, if they relied on brand new citation that was never mentioned before, never addressed before, and all of a sudden that became the essential element of their ground of unpatentability, then I think you're correct that the case law of this court has said that that probably is a problem. What if the narrative had discussed the inherency in connection with the piece of prior art, right? If the board opinion had said it was relying on inherency, the narrative and the board opinion, if it wasn't just this random paragraph in a C-site along with a bunch of other paragraphs. I don't even know if that would get them there, because their argument is it's a brand new theory, that the PTO board has shifted midstream in the middle of this thing. The bottom line is what's the issue in this case? Anticipation. What's the issue from the very beginning? Whether or not Tomioka anticipates Claim 14. That has always been the issue from the very beginning, and the disputed elements haven't really changed either, because from the very beginning, what Open TV has argued is your elements that you've cited and that you've shown in that reference don't show TV and non-TV appliances or TV and non-TV devices. Why then the reliance on the Netson Declaration? I don't know why the board put that in there, but if you go look at it. That declaration is headed Anticipation and Obviousness, if I recall correctly. Right, because early on. How does the board distinguish what they're talking about here is obviousness? Well, all the board is talking about with paragraph 72, if we go to that paragraph, Your Honor, I can take you to it at page appendix 2876. All they're talking about there is that, of course, the board is responding to an argument by Open TV. What was the argument that Open TV made? You haven't shown us TV and non-TV devices. You said 2076. 2876, Your Honor. I'm sorry. I'm sorry. I apologize if I was going too quickly. Let me get you to that page first and look at paragraph 72. Let's see what the expert says there. The Tomioka system, therefore, presents the user with current content based on the user's history and preferences when a user engages in a new activity on a different device. Based on these disclosures, it is necessarily the case that the Tomioka system is configured to, quote, detect a second user activity performed using a second device and then access the user profile in response to that activity, as in claim 14. So now, what's the board talking about in the board decision where they cite that? If you go back to page appendix 17 of the board decision, they're saying why they believe Tomioka has the detect element, right? And they're talking about the access and the detect element here. Access element on page 16. They go to page 17 and they keep talking about that element. And what they say at the very end, a person of ordinary skill would understand that listening, viewing, and browsing disclose activities on different devices. Remember what they're responding to. The allegation by Open TV, the argument all along was, you haven't shown us different devices. You've only shown us that the prior art shows it on a singular device, like just on a TV to a TV. It seems to me to be pretty hypothetical almost, that argument. For anticipation, you have to show that you have identified an actual limitation that reads on the patent limitation at issue. And when I look at this and I see what the board said with result to Knudsen, it relies on Knudsen to seal the deal. Yeah, there's a lot of scattershot things out there, but it relies on the expert declaration to say, when you look at all this, there's only one thing you can get out of it because it's necessarily the case. And then it goes on and makes the anticipation of finding. I guess the way I would characterize that, Your Honor, is a little differently. I'd say rather than using it to seal the deal, they're simply pointing to another piece of evidence confirming what they've already determined. Well, if that's true, then shouldn't the other side have an opportunity to address that new piece of evidence? And they had an opportunity, Your Honor. They had an opportunity. I mean, they talked about this at the oral hearing, and if they had an opportunity, they could have made a motion to, A, submit a surreply, which they didn't do. They could have made a motion to exclude the evidence, which they didn't do. This court has already acknowledged that those are opportunities to respond if you know about and have knowledge of the evidence. Furthermore, let's get beyond that. This was not an essential basis for the board's finding. The board made its finding based on the disclosure of Tomioka. Tomioka talks about using, in particular, on page 17, they talk about paragraph 58 from Tomioka. Paragraph 58 is the centerpiece of this analysis by the board, where they talk about having a central user profile or a centralized user description scheme where all of your information is in one place and where you can plug that information into multiple other devices. Listening devices, viewing devices, and browsing devices. All the board is saying is if it's a listening device or a viewing device or a browsing device, those are different than just TVs. Those are like computers that you browse on. Those are like audio systems in your car that you listen to. Those are like TVs that you watch. So that's all the board is saying, and they've further confirmed it by something that the expert said. Remember, the board is writing this decision in response to the arguments that have been advocated by Open TV throughout the proceeding. This is effectively a response to their argument. It's not a new issue. It's not a new theory. It's a response to their argument. I think that's our main answer to the APA question, Your Honor. What's your position? When we read it, it's necessarily the case. Is this an inherency finding that the board made here? Well, I don't believe it is, Your Honor. I think Judge Moore asked me earlier, for the purpose of the hypothetical question, to assume that the declaration was making an inherency statement. First of all, the declaration doesn't use the word inherency. How did you take the declaration? Well, I don't think it says inherency in that paragraph. It just says listening, viewing, browsing. They say those are necessarily things that are different than just TV watching. That's what they're saying, and an ordinary person would understand that. Nowhere does the declaration say that that's a basis for an inherency rejection. So I don't think inherency is the word inherency does not appear in the declaration. Yeah, but that's not necessary. It's not. It's not. But it doesn't appear in the board decision either. The findings of the board do not rely on an inherency theory. They rely on anticipation from the disclosure of the device. It's a direct anticipation. The board doesn't rely on one, but it appears that it relies on an expert declaration that does. Not as its essential basis for its unpatentability determination. It's an extra piece of information that the board says see exhibit 1016. But for the citation to the expert declaration, would we be here? I mean, is there enough disclosure in Tomioka? In my view, if that wasn't there, the only difference would be we'd still have this board decision. We'd still have an unpatentability. That's what I mean. I understand your argument and your view, but I'm looking at what the board did here, and it seems to me that the board said we've got all these different pieces out here, and when you look at them, it's necessarily the case. It's like closing the deal, as I said. It's necessarily the case that this access disclosure is disclosed in Tomioka. But I don't think the board is saying that that's based on inherency at all. I mean, I can't find the word inherency in the board decision. Okay, assuming it's not inherency, is it a new theory? No. A new theory of anticipation? No. The theory has all along from the very beginning, from the very beginning petition is the elements of the claim are disclosed in the prior art. The board looked at that evidence. The board considered it, and they said we're persuaded. We think a preponderance of the evidence is the standard that's necessary, satisfies anticipation. It's not based on inherency. It's not a new theory. It's not a shift. It's the theory that's always been there all along. If anything that's in here that might be different than what was in the original petition, it's simply as a basis to respond to what would be the argument. That doesn't say necessarily the case. I mean, does it or does it not make that disclosure? And we're talking about anticipation. If this was an augustness issue we're looking at, I'd feel a lot different. But we're talking about anticipation. I kind of want to see something more than just unnecessarily some sort of like logically or, you know, depending on how you wake up in the morning, this is a situation today. You know, I want to see something that expresses that limitation. And I think if you read the Tomioka reference closely like the board did and like the petition summarizes, you'll see that it is expressly disclosed. What Tomioka expressly discloses is use of multiple devices, not just TVs, TVs, audio equipment, VCRs, computer browsing equipment to develop a profile. Once you develop the profile from the use of all those different devices, it shows my preferences, I can then take that profile and I can plug it into multiple different devices including TVs, VCRs, audio equipment, sound recording and sound devices in my car. And that profile will work on any of those devices. That's what Tomioka teaches. Now, Open TV has argued you can't show me the exact words in one sentence where it says that. Well, when you read this reference and you read this disclosure. Well, yes, I mean, this is anticipation we're talking about. That's right. Show me the exact words. Show me the exact limitation, not guesswork. Well, I think that's what the board decision does, Your Honor. I think the board decision does show you those limitations. It shows you each limitation of the claim. And I can give you examples. For example, in paragraph 58 in Tomioka's disclosure, which the board cites to, it tells you right in that paragraph, in this manner the user, I'm going to take you to page A2487, okay, Your Honor? And I'm going to go right to paragraph 58, which is the top of that page, of 2487. This is just an example to help ease your concern, Your Honor. Now, are you on page 2487? Yep. Which line? I'm going down. One, two, three, four, five lines down. In the beginning of the sentence, in the middle, it says, in this manner. Do you see that? In this manner. I'm looking at something different. I'm looking at 2487? Correct. There are line numbers and paragraph numbers. Yes. It's line number five, paragraph 58, on page appendix 2487. In this manner. Okay. Do you see that? In this manner, the user only has to specify his preference at most once on a single device. And subsequently, the descriptors are automatically uploaded into devices by the removable storage device. What they're saying is, and then further reading, keep reading down, the system can store the user history and can create entries into programs that viewing information to obtain desired information. The user descriptor scheme enables modeling the user by providing a central storage for the user's listening, viewing, browsing preferences. Now, you've got this centralized, stored profile. You can then use it on any of these other devices for either listening or browsing on a computer or viewing on a TV. And, in fact, to help you. Thank you, Your Honor. The first site the board has when it holds that it's present is to the petition page 15 to 17. And the petition page 15 to 17 cites paragraph 58 in the very sentence you just read out loud and says, this shows different devices. Exactly. Correct? Exactly, Your Honor. And that's what the board cites first. And then it has a C site to the Knutson Declaration. Exactly, Your Honor. And thank you for that. And the whole point of me going to paragraph 58 was just to give you comfort that this isn't some new theory. This is a theory that's been there all along from the very beginning and from the petition. So I think all the features are disclosed, Your Honor. Thank you. Thank you, Your Honor. So we don't dispute that the reference says different devices. It says that over and over again. But what it's talking about is user preferences and behavior affecting content the user gets on, or not even content, affecting how other devices work. So in that same paragraph, it gives you the example of setting radio stations for a car stereo and a home stereo. And so what Tomioka is talking about when it talks about the user profile, it talks about on the same device. And actually, Tomioka, if I can point you to paragraph 93, which is on appendix 2514, what Open TV has been arguing all along is that, not disputing that there are different devices, but at line, let's see, around line 35, when we're talking about the different types of user descriptions, I'm on appendix 2514, which is in Tomioka, paragraph 93, about line 35. The reference explains what happens if you use different types of devices, a radio and a TV, which is required in the claims. The reference says here and in other places that the use of multiple user identification descriptions for the same user is useful. When the user uses, I think that's multiple, different types of devices, such as a television, home stereo, et cetera, and maintains multiple different sets of preference descriptions. That is what the reference says about a relationship, an embodiment, where there's a connection between two different types of devices. There are multiple user profiles. And so that is not a teaching, as required under 102, of the activity on one type of device affecting the content sent on another type of device, which is what the claims require. And the fact that it's anticipation is one of the things that made this the hardest petition I've ever seen, because it's not just anticipation where you need the high bar of particularity, but it's also a detailed claim with a configuration and connections between the elements that appears in almost every element in the claim, and a petition with huge amounts of citations, but lacking that roadmap. It developed over time, and that's improper under the IPR statute and the APA. It's a failure of notice there, too. I think I'm over my time. Thank you. Thank you. We thank both sides, and the case is submitted.